**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL LEJENDER,

          Plaintiff,

   v.

CITY AND COUNTY OF SAN FRANCISCO,
et al.,

          Defendants.
_____/

No. C 12-05450 SI

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

     Plaintiff Michael LeJender has filed suit against the City and County of San Francisco, his employer, and Maxwell Chikere, the director of his division.  LeJender alleges that defendants have unlawfully discriminated against, retaliated against, and harassed him in violation of Title VII of the Civil Rights ACt of 1964, 42 U.S.C. § 1981, and the California Fair Employment and Housing Act (FEHA).  On December 13, 2013, defendants moved for summary judgment on LeJender's claims.  Docket No. 27.  This motion came on for hearing before the Court on January 14, 2014.  Docket No. 52.  The Court has considered all of the arguments of counsel and the papers submitted, and for the reasons explained below, GRANTS the defendants' motion.

**BACKGROUND**

     LeJender is an African American male employed by defendant, the City and County of San Francisco, as a Porter at Laguna Honda Hospital ("LHH") in San Francisco, California.  LeJender has been employed as a Porter at LHH since 1994.  Complaint ¶ 6; LeJender Deposition ("Depo."), pg. 14.

1    Defendant Maxwell Chikere has been Director of Environmental Services at LHH since 2002. Chikere

2    Decl. ¶ 3.

3         LeJender alleges that while under the general supervision of Chikere he has been subjected to

4    a pattern of continuing, unlawful and discriminatory employment practices, including: a) unwarranted,

5    unrelenting, and close scrutiny; b) continuous harassment; c) continuous undermining of his ability to

6    perform his duties; d) unwarranted criticism; e) false accusations; f) a refusal of communication; g)

7    assaulting conduct; h) unwarranted attempts to change his shift; I) unwarranted and unjustified write-

8    ups; j) false accusation of abandonment of his post on February 10, 2012; k) false accusation of taking

9    an unauthorized break on February 10, 2012; and l) false accusations of the falsification of his time and

10   attendance records of February 10, 2012. Complaint ¶ 9. LeJender described the incidents giving rise

11   to these claims in his declaration and deposition testimony.

12        LeJender testified in his deposition that he was subject to unwarranted and unrelenting scrutiny

13   by Chikere and Raymond Gaurin, a former Porter at LHH. LeJender testified that Chikere watched him

14   at work and that Gaurin would tell Chikere everything that LeJender did at work. LeJender Depo. pg.

15   41. LeJender's declaration stated that for over fifteen years, Gaurin and Chikere engaged in a pattern

16   of false accusations against him that kept him under severe emotional distress because he was forced

17   to stay constantly aware of Gaurin who was acting at the direction of Chikere. LeJender Decl. ¶ 27.

18        LeJender also testified about an incident in which he was subjected to unwarranted scrutiny; in

19   this incident Gaurin reported to Chikere that LeJender called Gaurin a cockroach. LeJender Depo. pg.

20   42-43. LeJender testified that Chikere went to other workers and asked them about what LeJender said

21   instead of talking to LeJender directly. He stated that he was not disciplined or written up for this

22   incident. *Id*. pg. 44. He could not recall when the incident happened but testified it occurred within the

23   last five years. *Id*. LeJender further testified that he was not able to think of any other specific incidents

24   of Gaurin watching him. *Id*. pg 63. As to Chikere, LeJender testified in his deposition that Chikere

25   watches Black employees more than other employees, but testified that he did not know of any other

26   incidents with other employees and that he did not know if Gaurin watched other employees. *Id*. pg.

27   66.

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Describing another incident of unwarranted and close scrutiny, LeJender testified that when he

2    was a member of the "wax crew," the group of Porters assigned to wax the floors, Chikere would not

3    assign him special projects and instead would ask people who were not on the wax crew.  *Id*. pg. 43.

4    LeJender stated that the wax crew members are usually the first people to get the special projects but

5    that Chikere did not ask any member of the wax crew to do the special projects.  *Id*. pgs. 43-45.

6    LeJender testified that he knew that Chikere had asked other people to do a special project, which was

7    to wax the hallways at night during the graveyard shift prior to the arrival of the state inspectors,

8    because he saw the schedule.  *Id*. pg. 45.  LeJender testified he did not know the seniority of the people

9    who were asked to do the special project.  *Id*.  He also did not know the date when this occurred.  *Id*.

10

11    LeJender also stated in his declaration that he was continuously harassed by Chikere and as a

12    result became so emotionally distraught that he has sought psychotherapy in order to continue to

13    function and maintain his employment.  LeJender Decl. ¶¶ 37-38.  As to his claim of continuous

14    harassment, LeJender testified that Chikere did not give him credit for a job well done when others

15    would tell Chikere that LeJender had done well.  LeJender Depo. pg. 58.  LeJender stated that he was

16    not able to recall how many times this happened, any specific occurrences, or any specific people who

17    reported positive reviews of his work.  *Id*. pg. 61.

18    As another example of continuous harassment by Chikere and as the basis for his claims that he

19    was subjected to false accusations of abandonment of his post, taking an unauthorized break, and

20    falsification of his time and attendance records of that date, LeJender described an incident that occurred

21    on February 10, 2012.  LeJender Depo. pgs. 33-34.  On February 10, LeJender was working overtime

22    at LHH and asked permission from his supervisor, Jose Lopez, to move his car.  *Id*. pg. 34.  He was

23    given permission by Lopez and when he was returning from moving his car he saw Chikere looking at

24    him.  *Id*. at 35.  LeJender was with another Porter, Harold Dillard, when Chikere saw him.  *Id*.  The next

25    day LeJender learned that he was receiving a write-up for leaving to move his car.  *Id*.  LeJender

26    attended a meeting regarding the February 10 incident, but he was not suspended or disciplined at all

27    for the incident.  *Id*. pgs. 39-40; 79.  LeJender cited the write-up he received after the February 10, 2012

28    incident to support his claim of unwarranted and unjustified write-ups and false accusations.  *Id*. pgs.

77; 103-04.  LeJender testified at his deposition that there was no reason that he felt the February 10 incident was related to his race.  *Id*. pg. 65.  LeJender stated that he felt that Chikere falsified the form and lied about the time reported on the form because of his race, but conceded that although he felt that way, there was no way that he could prove that.  *Id*. pg. 91.

In his deposition, LeJender testified about a confrontation he had with Chikere as an example of when he was disciplined at LHH.  In this confrontation, LeJender asked Chikere why he was assigned to a particular shift and Chikere responded with what LeJender described as a lame excuse.  *Id*. pg. 29.  LeJender asked Chikere another question and Chikere responded once more; then LeJender walked away.  *Id*.  Chikere yelled at LeJender, close to his face, and was pulled away by two other managers.  *Id*. pgs. 29-30.  LeJender could not remember the date of the confrontation, but testified that he was not disciplined for the event.  *Id*. pg 30.  LeJender also testified that every time that he asked Chikere something Chikere was negative toward him and Chikere also rejected the ideas LeJender offered to improve the workplace.  *Id*. pgs. 41-42.

As to his claim that he was subjected to a continuous undermining of his ability to perform his duties, LeJender testified that no particular incidents came to mind.  *Id*. pgs. 68-69.  But to the claim that he was subjected to unwarranted criticism, LeJender cited Chikere's refusal to listen to suggestions LeJender provided about the workplace.  *Id*. pg. 69.  LeJender was not able to think of any specific ideas he suggested to Chikere or how many times he offered ideas, but testified that he felt Chikere listened to the ideas of other people more.  *Id*. pgs. 69-70.  Specifically, LeJender testified that Chikere listened to Jose Bonilla's ideas but could not remember exactly what Bonilla's ideas were.  *Id*. pgs. 70-72.  LeJender could not think of any specific incidents where Chikere criticized him directly, but testified that there were quite a few incidents when Chikere criticized him behind his back.  *Id*. pgs. 72-73.

As to his claim that Chikere refused to properly communicate with him, LeJender testified that Chikere is unresponsive when he brings issues up to him and again cited the yelling confrontation he had with Chikere.  *Id*. pgs. 92-93.

Addressing his claim of assaulting conduct, LeJender cited the way Chikere looks at him and the work assignment he receives.  *Id*. pg. 95.  LeJender testified that he received heavier or more difficult assignments than other people.  *Id*. pg. 98.  He stated that the supervisors were responsible for

4

the assignments and his supervisors at the time were Gloria, Olga, and Julio. *Id*. He then stated that Chikere was responsible for the assignments. *Id*. LeJender testified that he felt that he was given those assignments because of his race, but he did not know why he felt that way. *Id*. pg. 99.

Regarding his claim of unwarranted attempts to change his shifts, LeJender testified that Chikere changed the shift assignments and removed all of the early wax crew shifts so that there were no longer shifts beginning at 6:00 am. *Id*. pg. 101. After the change to the schedule, LeJender requested a 7:00 am start time instead of the 9:00 am start time he was assigned, but Chikere refused. *Id*. pgs. 101-102. When LeJender subsequently took a different assignment, the wax crew began coming in at 7:00 am, the time that LeJender previously requested. *Id*. pg. 102. When LeJender asked about it he was told that the reason for the change was "operational needs." *Id*. LeJender could not remember the race of the employees who were members of the wax crew with the 7:00 am shift start time. *Id*. pg. 103. LeJender testified that there were no other incidents of unwarranted attempts to change his shift other than Chikere's refusal to change LeJender's shift start time to 7:00 am. *Id*.

LeJender maintains that these incidents give rise to his claims of discrimination, retaliation, and harassment in violation of Title VII, § 1981, and FEHA. LeJender filed an administrative charge of discrimination with the Equal Employment Opportunity Commission and the California Department of Fair Employment and Housing on June 5, 2012. Complaint ¶ 15; Complaint Ex. 1. The California Department of Fair Employment and Housing issued LeJender a notice of right to sue on June 7, 2012 and the United States Department of Justice issued LeJender a notice of right to sue on August 3, 2012. Complaint ¶ 15; Complaint Exs. 2-3. The present suit was filed on October 22, 2012. Docket No. 1. On January 11, 2013, the Court issued an order relating this case and 12-cv-4950 SI, *Dillard v. City and County of San Francisco, et al*. Docket No. 11. Defendants filed this motion for summary judgment on December 13, 2013 and hearing on this motion is scheduled for January 17, 2014. Docket No. 27.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of

demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

**I.      Statute of Limitations for LeJender's § 1981 Claims**

Defendants assert that because LeJender filed this suit on October 22, 2012, § 1981 claims for conduct occurring prior to October 22, 2008 are time-barred by a four-year statute of limitations. Motion pg. 4. Plaintiff states that he makes no claim for conduct that occurred prior to October 22, 2008. Opposition pg. 11. Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Although § 1981 does not contain a statute of limitations, in 1990, Congress enacted a four-year statute of limitations for

1    causes of action arising under an Act of Congress enacted after December 1, 1990.  28 U.S.C. § 1658.

2    The Supreme Court has since held that claims brought under § 1981, as amended by the Civil Rights

3    Act of 1991, arise under the 1991 Act, and thus are subject to the four-year statute of limitations.  *Jones*

4    *v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004).  Accordingly, Dillard's § 1981 claims in

5    the present case are limited to those that are based on occurrences on or after October 22, 2008.

6

7    **II.      Discrimination Claims**

8             LeJender's first, fourth, and fifth claims allege that defendants unlawfully discriminated against

9    him on account of his race and color in violation of Title VII, § 1981, and FEHA, respectively.

10            Title VII prohibits employers from discriminating against individuals on the basis of race and

11   § 1981 similarly prohibits discrimination in the "benefits, privileges, terms and conditions" of

12   employment.  *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).  "When

13   analyzing § 1981 claims, we apply the same legal principles as those applicable in a Title VII" case.

14   *Id.*  (citing *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F.3d 840, 850 (9th Cir. 2004)) (internal

15   quotation mark omitted).  Like Title VII and § 1981, California's anti-discrimination provision under

16   FEHA makes it unlawful for employers to engage in specified types of discrimination, including those

17   based on race.  *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1161 (Cal. 2008).

18            The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

19   (1973), is applicable to Title VII, § 1981, and claims alleging discrimination under FEHA.  Under the

20   *McDonnell Douglas* framework, a plaintiff must first prove a prima facie case of discrimination by

21   establishing: (1) he or she is a member of a protected class; (2) he or she was qualified for the position;

22   (3) he or she suffered an adverse employment action; and (4) some other circumstance suggests

23   discriminatory motive.  *See Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011); *Guz v. Bechtel*

24   *Nat. Inc.*, 24 Cal. 4th 317, 354 (Cal. 2000).

25            Once the plaintiff has established a prima facie case, the burden then shifts to the employer to

26   respond with a legitimate, nondiscriminatory reason for its actions.  *See Reeves v. Sanderson Plumbing*

27   *Products, Inc.*, 530 U.S. 133, 142 (2000).  If the employer meets this burden, the plaintiff must establish

28   that the employer's articulated reasons were "pretext" or a cover-up for unlawful discrimination.  The

United States District Court
For the Northern District of California

1    plaintiff may do so by providing "specific, substantial" direct or circumstantial evidence of pretext.

2    *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

3        The Ninth Circuit defines adverse employment action "broadly." *Fonseca*, 374 F.3d at 847.  An

4    action that "materially affect[s] the compensation, terms, conditions, or privileges" of employment is

5    an adverse employment action.  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citing

6    *Chuang v. Board of Regents*, 225 F.3d 1115, 1125-26 (9th Cir. 2000).   Under FEHA, an adverse

7    employment action is one that results in a material adverse change in the "compensation or in terms,

8    conditions, or privileges of employment." *Green v. State*, 42 Cal. 4th 254, 262 (2007); *Akers v. County*

9    *of San Diego*, 95 Cal. App. 4th 1441, 1455 (2002).

10       LeJender maintains that he has been subjected adverse employment actions, including: a)

11   unwarranted, unrelenting, and close scrutiny; b) continuous harassment; c) continuous undermining of

12   his ability to perform his duties; d) unwarranted criticism; e) false accusations; f) a refusal of

13   communication; g) assaulting conduct; h) unwarranted attempts to change his shift; I) unwarranted and

14   unjustified write-ups; j) false accusation of abandonment of his post on February 10, 2012; k) false

15   accusation of taking an unauthorized break on February 10, 2012; and l) false accusations of the

16   falsification of his time and attendance records of February 10, 2012.  Opposition pg. 13.  These alleged

17   actions have compelled LeJender to seek and maintain psychotherapy, which he asserts has altered the

18   terms and conditions of his employment.  Defendants argue that none of the events LeJender challenges

19   amount to an adverse employment action.  Motion pg. 6.

20       The Court must determine whether those alleged actions "materially affect[ed] the compensation,

21   terms, conditions, or privileges" of LeJender's employment. *Davis*, 520 F.3d at 1089.  As to his claims

22   of unwarranted scrutiny, LeJender has not provided evidence that he suffered an adverse employment

23   action.  The incidents LeJender described consisted of Chikere and Gaurin watching him work, which

24   he conceded did not result in any disciplinary action. LeJender Depo. pg. 44.  LeJender testified that

25   Chikere did not assign him any special projects when he was a member of the wax crew, presumably

26   to argue that he was barred from a sort of promotion or to argue that the terms of his employment were

27   altered. *Id*. pg. 43.  However, LeJender also testified that Chikere did not ask any other members of the

28   wax crew to take on any special projects, nor did he know the seniority of the employees who were

United States District Court
For the Northern District of California

given the special projects. *Id*. pgs. 43-45. While LeJender may have anticipated or expected the offer of a special project, he has not presented any evidence to demonstrate that Chikere's failure to assign him a special project "materially affect[ed] the compensation, terms, conditions, or privileges" of his employment. *Davis*, 520 F.3d at 1089.

LeJender alleges he was subject to continuous harassment, testifying that Chikere did not credit him for a job well done. LeJender Depo. 58-61. However, LeJender fails to provide the Court with evidence that any silence from Chikere regarding LeJender's work quality constituted a material alteration to the compensation, terms, conditions, or privileges of his employment. LeJender also cites the incident that occurred on February 10, 2012 as an example of continuous harassment by Chikere. *Id*. pgs. 33-34. However, LeJender testified in his deposition that he was not suspended or disciplined for the February 10 incident and he has not shown that the February 10 incident materially impacted his employment. *Id*. pgs. 39-40. As an example of unwarranted criticism, LeJender testified that Chikere refused to listen to suggestions he offered about improving the workplace, but has not explained or provided evidence of how that alleged action materially affected the terms of his employment. *Id*. pgs. 69-73. Further, LeJender conceded in his deposition testimony that he was not disciplined for the incidents that he alleged constituted unwarranted scrutiny, false accusations, and falsification of his time and attendance records. *Id*. pgs. 44; 39-40; 79; 30.

LeJender argues that the psychotherapy he has sought as a result of the alleged incidents obviously altered the terms and conditions of his employment. In support of his argument, LeJender cites *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000) and *Akers*, 95 Cal. App. 4th 1441, presumably to argue constructive discharge. Neither case provides legal support for LeJender's position. In *Kortan*, the Ninth Circuit reiterated the standard for constructive discharge claims, that a "reasonable person would feel that the conditions of employment have become intolerable." *Kortan*, 217 F.3d at 1112 (quoting *Draper v. Cour Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998)). And in *Akers*, the California Court of Appeal stated that to constitute an adverse employment action, the act "must result in a substantial adverse change in the terms and conditions of the plaintiff's employment. A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." 95 Cal. App. 4th at 1455. LeJender has failed to provide evidence that any of the

incidents he alleges resulted "in a substantial adverse change in the terms and conditions of the [his] employment," or that a "reasonable person would feel that the conditions of [his] employment have become intolerable." *Kortan*, 217 F.3d at 1112; *Akers*, 95 Cal. App. 4th at 1455. Even viewing the evidence in the light most favorable to LeJender, the non-moving party, there is insufficient evidence that the actions alleged by LeJender constitute an adverse employment action.

Additionally, LeJender has not provided the Court with evidence of a discriminatory motive. *See Zeinali*, 636 F.3d at 552; *Guz*, 24 Cal. 4th at 354. In his deposition testimony LeJender repeatedly conceded that he did not think the alleged actions were because of his race. When asked if there was any reason he felt that the incident that occurred on February 10, 2012 was related to his race, LeJender testified, "No." LeJender Depo. pg. 65. Similarly, when asked whether he felt an incident with Gaurin was related to his race, LeJender testified, "No." *Id*. pg. 67. In response to the question of whether there was anything that made him feel as though Chikere watched him because of his race, LeJender testified, "No." *Id*. pg. 99. LeJender also testified that he felt that he received harder assignments than other people because of his race, but stated "[W]hy do I feel that way? I don't know. I just feel that way." *Id*. As to Chikere's refusal to change his shift start time, LeJender testified that there was no reason that he felt it was because of his race. *Id*. pg. 101. To the extent that LeJender relies upon his own declaration and the declarations of Harold Dillard and Kerwin Johnson as evidence of defendants' discriminatory motive, the Court SUSTAINS defendants' evidentiary objections to these declarations as they lack personal knowledge or evidentiary foundation (*see e.g.*, Dillard Decl. ¶ 14 ("Only African American Blacks were subjected to such close scrutiny by Chikere."); LeJender Decl. ¶ 33 ("In fact, African American porters, although they constantly voiced their complaints of racially discriminatory treatment by Chikere in job assignments and scheduling, fear such complaints to Human Relations or Ramirez would be futile. . ."); Johnson Decl. ¶ 3 ("On one occasion, Chikere made the comment that he would never hire black people.")).

Accordingly, LeJender has failed to make a prima facie case of discrimination, and summary judgment is GRANTED to defendants on the discrimination claims in the first, fourth, and fifth claims of LeJender's complaint.

United States District Court
For the Northern District of California

**III.    Retaliation Claims**

LeJender's second and sixth claims allege defendants retaliated against him in violation of Title VII and FEHA. Title VII prohibits an employer from discriminating against an employee for opposing an unlawful employment practice. *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011). Similarly, "FEHA's antiretaliation provision makes it unlawful for an employer to 'discharge, expel, or otherwise discriminate against *any person* because the person has opposed any practices forbidden under this [Act] or because the person has filed a complaint, testified, or assisted in any proceeding under this [Act]." Gov. Code, § 12940 (f); *Sada v. Robert F. Kennedy Medical Center*, 56 Cal. App. 4th 138, 157 (1997). Retaliation claims under Title VII and FEHA follow the same burden-shifting framework described in *McDonnell Douglas*.

To establish a prima facie case, the plaintiff must show: (1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action. *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *Yanowitz v. L'Oreal USA Inc.*, 36 Cal. 4th 1028, 1042 (Cal. 2005). "A causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson*, 630 F.3d at 936; *Miller v. Department of Corrections*, 36 Cal. 4th 446, 472 (Cal. 2005). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to provide evidence the adverse action was taken for legitimate, non-discriminatory reasons. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the employer provides legitimate, non-discriminatory reasons, the plaintiff must then show the employer's explanation is a pretext for impermissible discrimination. *Id.*

Defendants argue that LeJender cannot make a prima facie case of retaliation because he did not engage in a protected activity. Motion pg. 11. Plaintiff counters that he engaged in protected activity by complaining about and protesting the actions and conduct against him for years. Opposition pg. 14. Protesting the actions of supervisors for their alleged violation of Title VII is a protected activity, as is making informal complaints of such conduct to a supervisor. *Ray*, 217 F.3d at 1240 n.3. Under FEHA, a protected action is the opposition of "any practices forbidden under this [Act] or because the person has filed a complaint, testified, or assisted in any proceeding under this [Act]." *Yanowitz*, 36 Cal. 4th

United States District Court
For the Northern District of California

at 1042.  In his declaration, LeJender stated that he has been continuously harassed by Chikere even though he continuously complained of such discriminatory and retaliatory treatment.  LeJender Decl. ¶ 37.  However, LeJender provides no additional evidence to support his claims and contradicts this statement in his deposition testimony.  LeJender testified that he complained to his union about Chikere, but conceded that he did not make any complaints of racial discrimination, other than this lawsuit, to LHH or the City of San Francisco.  LeJender Depo. pg. 106.  And although LeJender testified that he spoke up, he could not recall any particular incidents or what was actually going on.  *Id*. pg. 107.

On the present record before the Court, it does not appear that LeJender has shown that he engaged in a protected activity.  And even if the Court were to proceed as though LeJender engaged in a protected action, LeJender's retaliation claims would still fail.  The purpose of Title VII's anti-retaliation provision is to bar employers from taking actions which "could have a deleterious effect on the exercise of these rights by others."  *Passatino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).  Similarly, the FEHA retaliation provision "serves the salutary purpose of encouraging open communication between employees and employers so that employers can take voluntary steps to remedy FEHA violations, a result that will be achieved only if employees feel free to make complaints without fear of retaliation."  *Miller*, 36 Cal. 4th at 475.

The Supreme Court has held that the antiretaliation provision of Title VII, unlike the substantive provision, "is not limited to discriminatory actions that affect the terms and conditions of employment." *Thompson v. North American Stainless, LP*, 131 S.Ct. 863, 868 (2011).  "Rather, Title VII's antiretaliation provision prohibits any employer action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id*. (quoting *Burlington*, 548 U.S. at 68) (internal quotation mark omitted).[1]  LeJender was not subject to a suspension without pay or reassignment of duties, which have been considered adverse employment actions for Title VII retaliation claims.  *See Burlington*, 548 U.S. at 70.  Nor was LeJender fired from his employment, a typical adverse

---

[1] "[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint.  By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position" the standard will "screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 69 (2006).

1    employment action in retaliation cases. *See Thompson*, 131 S.Ct at 865.  Although LeJender seems to

2    think that Chikere's refusal to change his shift start time from 9:00 am to 7:00 am constitutes an

3    unwarranted attempt to change his shifts, he conceded in his deposition testimony that *all* of the shift

4    start times had changed, not just his personal start time. LeJender Depo. pgs. 101-102.  While LeJender

5    might consider this an adverse employment action, he has failed to show the Court how this incident

6    constituted a material alteration to the terms and conditions of his employment or how the change in

7    shift times "might have dissuaded a reasonable worker from making or supporting a charge of

8    discrimination." *Thompson*, 131 S.Ct at 868.  Similarly, LeJender testified that he received heavier and

9    more difficult assignments than other people, presumably to argue that he suffered an adverse

10    employment action in the assignment of his duties. LeJender Depo. pgs. 95-99.  However, LeJender has

11    not provided evidence of how these assignments materially altered the terms and conditions of his

12    employment or how a reasonable worker would have been dissuaded from making a charge of

13    discrimination as a result of the assignments. *See Thompson*, 131 S.Ct at 868.  Taking all of LeJender's

14    allegations together they do not constitute "employer action that well might have dissuaded a reasonable

15    worker from making or supporting a charge of discrimination." *Id*.  Accordingly, LeJender has failed

16    to establish a prima facie case of retaliation under Title VII.

17       The standard for an adverse employment action under FEHA is whether the alleged actions

18    materially affected the "compensation or [in] terms, conditions, or privileges of employment." *Green*,

19    42 Cal. 4th at 262; *Akers*, 95 Cal. App. 4th at 1455.  As previously discussed with regard to LeJender's

20    discrimination claims, he has presented evidence that the actions he alleged "materially affect[ed] the

21    compensation, terms, conditions, or privileges" of his employment and consequently has not shown that

22    he suffered an adverse employment action. *Davis*, 520 F.3d at 1089. Accordingly, his FEHA retaliation

23    claim must fail.

24       Summary judgment is GRANTED to defendants on LeJender's second and sixth claims of

25    retaliation.

26    //

27    //

28    //

### IV.    Harassment

LeJender's third and seventh claims allege a hostile work environment, i.e., that defendants harassed him in violation of Title VII and FEHA.  To establish a prima facie case for a hostile work environment claim under Title VII, the plaintiff must show "(1) she was subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)) (internal quotation marks omitted).  The "working environment must both subjectively and objectively be perceived as abusive."  *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)) (internal quotation mark omitted).  "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile."  *Id*.  The "conduct must be extreme to amount to a change in the terms and conditions of employment."  *Id*. (citations omitted).  Title VII hostile work environment standards are also applicable to FEHA.  *Lyle*, 38 Cal. 4th at 278-79.

Viewing the evidence in the light most favorable to LeJender, under Ninth Circuit precedent, the conduct alleged was not sufficiently severe or pervasive to alter the conditions of his employment. Indeed, the Ninth Circuit has held much stronger harassment claims insufficient.  *See Kortan*, 217 F.3d at 1110-11; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000).  LeJender may have felt that the alleged incidents were harassing, but it did not affect "a term, condition, or privilege" of his employment.  *See Brooks*, 229 F.3d at 927.  LeJender has not shown that the incidents alleged were so severe and pervasive as to alter the conditions of his employment, and so he cannot make a prima facie showing of harassment.  Summary judgment is GRANTED to defendants on LeJender's third and seventh claims.

### V.    Municipal Liability

The Court need not reach the issue of municipal liability because LeJender has failed to make a prima facie case for his claims of discrimination, retaliation and harassment.

United States District Court
For the Northern District of California

1

2                              **CONCLUSION**

3          LeJender has failed to present a prima facie case of discrimination under Title VII, § 1981 or

4    FEHA because he has not demonstrated that he was subjected to an adverse employment action nor has

5    he established defendants acted with discriminatory motive.  None of the alleged actions taken against

6    LeJender "materially affect[ed] the compensation, terms, conditions, or privileges" of his employment,

7    and so do not amount to adverse employment actions.  *Davis*, 520 F.3d at 1089.  For the same reason,

8    LeJender has not made a prima facie showing of retaliation under FEHA.  And LeJender has not shown

9    that he was subject to actions that would have "dissuaded a reasonable worker from making or

10   supporting a charge of discrimination," to make a prima facie showing of retaliation under Title VII.

11   As to LeJender's harassment claims, he has not shown that the alleged conduct was sufficiently severe

12   or pervasive to alter the conditions of his employment and therefore cannot establish a prima facie

13   showing under Title VII or FEHA.  Accordingly, summary judgment is GRANTED to defendants on

14   all of LeJender's claims.

15

16          **IT IS SO ORDERED.**

17

18   Dated:  February 5, 2014

19                                          _____
                                            SUSAN ILLSTON
20                                          UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28